# UNITED STATES DISTRICT COURT

# DISTRICT OF HAWAII

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>    vs.<br><br>MODDHA INTERACTIVE, INC., MARIANNE VERONIKA SANDOR, EDWARD MICHAEL PORRAZZO, and SPAR STREET,<br><br>              Defendants. | CV. No. 18-00264-DKW-RLP<br><br><br>**PRELIMINARY INJUNCTION AND ORDERS:  (1) FREEZING ASSETS; (2) REPATRIATING ASSETS; (3) REQUIRING ACCOUNTINGS; (4) PROHIBITING THE DESTRUCTION OF DOCUMENTS; AND (5) GRANTING EXPEDITED DISCOVERY** |

## <u>INTRODUCTION</u>

This matter is before the Court upon the *Ex Parte* Application of Plaintiff Securities and Exchange Commission ("SEC") for a Temporary Restraining Order, Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings; (4) Prohibiting the Destruction of Documents; and (5) Granting Expedited Discovery (the "TRO Application").

The Court, having previously issued a Temporary Restraining Order and Orders (1) Freezing Assets; (2) Repatriating Assets; (3) Requiring Accountings;

(4) Prohibiting the Destruction of Documents; and (5) Granting Expedited

Discovery ("TRO"), and having considered the SEC's Complaint, the TRO

Application, the supporting Memorandum of Points and Authorities, the supporting

declarations and exhibits, Defendants' opposition to preliminary injunction, the

SEC's reply in support of the entry of a preliminary injunction, and the testimony,

evidence and argument presented to the Court at the July 23–25, 2018 hearing on

the Order to Show Cause Why a Preliminary Injunction Should Not Be Granted,

the Court finds that:

A.      This Court has jurisdiction over the parties to, and the subject matter

of, this action.

B.      The SEC has made a sufficient and proper showing in support of the

relief granted herein, as required by Section 20(b) of the Securities

Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d)

of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

§ 78u(b)] by evidence establishing a *prima facie* case and reasonable

likelihood that: (i) Defendants Moddha Interactive, Inc. ("Moddha"),

Marianne Veronika Sandor ("Sandor"), and Edward Michael Porrazzo

("Porrazzo") have engaged in, are engaging in, are about to engage in,

and will continue to engage in, unless restrained, transactions, acts,

practices and courses of business that constitute violations of Section

17(a) of the Securities Act, [5 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and (ii) Defendant Spar Street ("Street") engaged in, is engaging in, is about to engage in, and will continue to engage in, unless restrained, transactions, acts, practices and courses of business that constitute violations of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] (collectively, "Defendants").

C.  Good cause exists to believe that, unless preliminarily restrained and enjoined by order of this Court, Defendants will dissipate, conceal, or transfer assets which could be subject to an order directing disgorgement or the payment of civil money penalties in this action. It is appropriate for the Court to issue this Preliminary Injunction so that prompt service on appropriate financial institutions can be made, thus preventing the dissipation of assets.

D.  Good cause exists to believe that the repatriation of assets held in foreign locations is necessary.

E.  Good cause exists to believe that an accounting of assets is necessary.

F.  Good cause exists to believe that, unless restrained and enjoined by order of this Court, Defendants may alter or destroy documents relevant to this action.

G.     Good cause exists for the SEC to conduct expedited discovery.

The Court makes the following findings in support of the entry of a preliminary injunction.

Defendants offered and sold unregistered securities to investors, and misrepresented and failed to disclose material facts to those investors, including through the Moddha Private Placement Memorandum ("PPM").[1] SEC Ex. 6 (Moddha 2017 PPM); SEC Ex. 200 (11/11/14 Moddha Form D); SEC Ex. 201 (2/16/18 Moddha Form D). Moddha, Porrazzo, and Sandor engaged in a series of misrepresentations and omissions that should have been and were material to whether an investor chose to invest in Moddha and further engaged in a scheme to defraud. That fraudulent scheme included the following:

First, Moddha misrepresented the value, extent and quality of its patent portfolio. *See, e.g.*, SEC Ex. 6 (Moddha 2017 PPM) at 13 ("MODDHA owns its own exclusive proprietary portfolio of patents based on the Quantum Transducer 'QT'"). The testimony revealed that Moddha's patents have largely expired, are purportedly owned by other entities in partnership, or are not related to the Quantum Transducer. Moddha omitted these material facts from its PPM. While

---

[1] For example, the SEC presented evidence that investors Lance and Stephanie Weisel, introduced to Sandor and Porrazzo by Street, invested $500,000 in Moddha in 2017, based in part on the Moddha 2017 PPM. SEC Ex. 2 (10/11/17 Sandor Email to Weisels); SEC Ex. 3 (Moddha Offering Summary); SEC Ex. 4 (Moddha Verizon PowerPoint).

the Court cannot conclude that expired patents are valueless, the Court can and does conclude that the expired condition of Moddha's patents should have been disclosed in Moddha's marketing materials, as that fact would have been material to any prospective investor.

Second, Moddha misrepresented its business relationship with Verizon. Producing marketing materials emblazoned with the juxtaposed Verizon and Moddha trademarks on virtually every page,[2] expressly touting the multi-billion dollar value of the companies' joint relationship and distributing these materials to prospective investors, it was Moddha's clear intent to convey an established, existing and valuable relationship with one of the world's largest telecommunications companies. SEC Ex. 4 (Moddha Verizon PowerPoint). Moddha, however, has never received a single dollar in sales, licensing, or other revenue from Verizon, and the "Registered Supplier" relationship that it has repeatedly emphasized is, even if true, practically valueless. SEC Ex. 211 (7/3/18 Decl. of Jeffrey Schweitzer); SEC Ex. 210 (7/3/18 Decl. of Beth A. Sasfai); Defs.' Ex. E ("**Clarification on your registration status**: Verizon utilizes the supplier registration database to identify prospective suppliers. Being 'registered' in vSource makes you a potential supplier that we may consider for sourcing events. The registration process does not guarantee Business[.]").

---

[2] Moddha utilized the Verizon trademark without the company's permission to do so. SEC Ex. 211 (7/3/18 Decl. of Jeffrey Schweitzer).

Third, Moddha misrepresented its share dividend buyback program. While publicly and repeatedly claiming that foundational investors could achieve a virtually immediate 100% return on their investment through a buyback program that was without precedent in the history of corporate America, Moddha privately knew that the company has never been in a financial position to execute the program and would never be able to do so unless one of several "white whales" fulfilled his supposed pledge for as much as $10 billion in seed money. SEC Ex. 17 (11/3/17 Moddha Shareholder Update) ("To our knowledge and by our research, MODDHA is the only Private Company in history, who will have ever provided a 100% return on investment to our capital stock shareholders who believe in us and invested with us, to take us to the amazing place we are today."); SEC Ex. 59 (4/23/18 Sandor Shareholder Update) ("We have prepared an Offer to Re-Purchase Moddha Common Shares for any, and all, shares you are currently holding. The offer is only awaiting final approval from securities counsel in order for it to go out for distribution to you, from Transfer Online. . . . We have been advised to expect that within a week you will receive the documents with all instructions, and the form to participate, or withdraw.").

That Moddha ever truly believed that such an investor, including Oscar Peters and Keith Garner, was just on the horizon is nothing short of ludicrous. Peters, whom Moddha claims promised $150 million in investment money, proved

elusive.  According to Defendants, Peters turned them away on the tarmac because of supposed immigration problems, declined a meeting in Dubai after Defendants travelled there from Hawaii, and could not transmit the promised funds because he was "ill" (and years later, presumably remains so), because of upheaval in the Canadian skies and because of violence at a Turkish Embassy.  It appears that it never occurred to Defendants that Peters, whom they never met, was not real.  Nor could Defendants so much as identify the name of the private "Middle Eastern Investment Fund" that Peters purported to manage, which was prepared to invest up to $2 billion dollars in Moddha.

Garner of Atlanta made Peters look like a pauper.  Garner promised $10 billion to Moddha, according to Defendants.  And despite allegedly performing what they characterized as comprehensive due diligence on the financial wherewithal of Garner (and Peters), the only evidence that Defendants offered to prove Garner's reality was a one-page document ominously marked Exhibit X.  Even if considered, Exhibit X presents Defendants with more problems than it purports to resolve.[3]  Exhibit X is the first page report of a supposed Fidelity brokerage account owned by Garner, reflecting an account balance of more than $17 billion.   The single page contains numerous facial irregularities, including missing values and corresponding values that do not correspond.  The single page

_____

[3]The SEC declined to stipulate to the admission of Exhibit X because it was offered by Defendants on July 25, 2018 after the close of evidence on the previous day.

also includes a United States District Court criminal case number.  That federal court case number tracks to *United States v. Keith Garner*, 1:06-cr-00472-01-RWS-GGB, which in turn, evidences Garner's status as a convicted felon, sentenced by a United States District Judge to 120 months' imprisonment for fraud.[4]  Why Defendants' comprehensive due diligence did not disclose that fact is not clear.  To make it even worse, as if that were possible, the evidence shows that Defendants paid more than $30,000 to Garner to cover his alleged investment transfer fees while receiving not a single penny from the supposed investor in return.  On these facts, just whom was investing in whom is far from clear.  What is clear is that Garner's status as a whale was no more real, and perhaps even less so, than Peters', yet Moddha continued touting its buyback program that was reliant on both.

Fourth, Sandor and Porrazzo utilized investor funds for personal expenses unrelated to Moddha's business.  Such personal expenses included a $15,884.01 food and hotel bill at the Casa Del Mar in Los Angeles—including a $2,400 room

---

[4] The Court takes judicial notice of the district court docket sheet in *United States v. Keith Garner*, 1:06-cr-00472-01-RWS-GGB, ECF No. 235 (Judgment and Commitment) and ECF No. 301 (Final Judgment and Order of Forfeiture) (N.D. Ga.), because the documents are publicly available via the federal judiciary's Public Access to Court Electronic Records database, PACER, *available at* https://www.pacer.gov/.  Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record," including the records of other courts, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citations omitted); *Headwaters Inc. v. United States Forest Service*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (courts may take judicial notice of the docket in related cases as materials from a proceeding in another tribunal are appropriate for judicial notice).

rate, per night—financed directly from a $500,000 investment by the Weisels in October and November 2017.  SEC Ex. 236 (Moddha BofA 286 Statement, 11/1/17–11/30/17); SEC Ex. 209 (hotel invoices).  Sandor and Porrazzo attribute legitimacy to these expenses, explaining that they conducted at least five separate business meetings during the course of their late-November 2017 stay at the hotel, and that those meetings were so productive that they resulted in the execution of term sheets and "contracted business valued in excess of tens of millions of dollars" for their burgeoning company.  Opp'n to Prelim. Inj. at 26, Dkt. No. 22.  Defendants, however, have not offered a single such contract into evidence, nor have they offered the testimony, affidavit or even unsigned statement from any of the individuals with whom they allegedly met.  Moreover, the only "term sheet" they provided as evidence of the business purpose underlying their hotel stay was dated November 7, 2017—nearly two weeks before their stay at the Casa Del Mar began.  *See* Defs.' Ex. J. (11/7/17 Term Sheet).  Sandor and Porrazzo also claim entitlement to executive compensation under the terms of employment agreements with Moddha and contend that thousands of dollars of corporate withdrawals for that purpose should not be questioned.  The terms of the very agreements on which Defendants rely, however, indicate that compensation may not be paid to either one until Moddha raises at least $5 million in capital, a milestone that Defendants

admit has not been reached, even today.  *See* Defs.' Ex. N (Moddha Corporate

Records Book, Employee Contracts).[5]

Fifth, Street served as an unregistered securities broker who facilitated

investor sales on behalf of Moddha and without Moddha disclosing his

commission participation to those investors.  Absent such disclosure, those

investors were not aware that a material portion of their investments would not be

deployed as working capital for Moddha's business.[6]  Defendants do not deny that

multiple payments have been made to Street over a period of at least four years out

of corporate funds.  They claim, however, that such payments were made for

Street's contributions to interactive art projects consistent with a 2011 joint venture

agreement (SEC Ex. 50) between Street and Moddha.  Such assertions bear little

resemblance to reality.  The evidence shows that from 2014 through 2017, Moddha

made seven payments to Street totaling more than $200,000.  Each payment came

*immediately* on the heels of Moddha's receipt of investment funds, and each

payment consistently represented 15% of the amount of investment funds received.

SEC Ex. 261 (Summary Chart Re: Street Commissions); *see also* SEC Exs. 228–

242 (Moddha Bank Statements).  By contrast, there is no evidence of any art

---

[5]To the extent Sandor and Porrazzo claim that any transfers from Moddha to their personal accounts constitute loans or loan repayments, Defendants offered no documentation to support such claims to either the SEC or the Court.

[6]Nor did Defendants disclose Street's role to the SEC.  Indeed, Moddha's SEC Form D represented that no sales compensation was being paid to anyone.  *See* SEC Exs. 200 (2014) and 201 (2018).

project having been performed or completed in temporal association with any of the payments, with the only commercial art project identified by Defendants having been completed some years prior in 2012 and for which Defendants admitted they owe Street nothing. The payments need not be accompanied by a label designating them as "commissions" in order for the Court to identify them as such.

## I.

Based on the foregoing, IT IS HEREBY ORDERED that Defendants Moddha, Sandor, and Porrazzo and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from, directly or indirectly, in the offer or sale of any securities, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

A.    employing any device, scheme or artifice to defraud;

B.    obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

C.	engaging in any transaction, practice, or course of business which

operates or would operate as a fraud or deceit upon the purchaser;

in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## II.

IT IS FURTHER ORDERED that Defendants Moddha, Sandor, and

Porrazzo and their officers, agents, servants, employees, attorneys, subsidiaries and

affiliates, and those persons in active concert or participation with any of them,

who receive actual notice of this Order, by personal service or otherwise, and each

of them, be and hereby are preliminarily restrained and enjoined from, directly or

indirectly, in connection with the purchase or sale of any security, by the use of

any means or instrumentality of interstate commerce, or of the mails, or of any

facility of any national securities exchange:

A.	employing any device, scheme or artifice to defraud; or

B.	making any untrue statement of a material fact or omitting to state a

material fact necessary in order to make the statements made, in the

light of the circumstances under which they were made, not

misleading; or

C.	engaging in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person;

in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## III.

IT IS FURTHER ORDERED that Defendants Moddha, Sandor, and Porrazzo, and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by Sandor or Porrazzo, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer.

## IV.

IT IS FURTHER ORDERED that Defendant Street and his officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with him, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from violating Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)], by the use of means or instrumentalities or interstate commerce, of the mails, or of the facilities of a national securities exchange, directly or indirectly effecting transactions in, or

inducing or attempting to induce the purchase or sale of, securities without being registered with the SEC, or associated with a broker-dealer registered with the SEC.

## V.

IT IS FURTHER ORDERED that Defendant Street, and his officers, agents, servants, employees, attorneys, subsidiaries and affiliate, and those persons in active concert or participation with him, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by Street, soliciting any person or entity to purchase or sell any security in an unregistered offering by an issuer.

## VI.

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, Defendants and their officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert with them, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from, directly or indirectly, transferring, assigning, selling, hypothecating, changing, wasting, dissipating, converting, concealing, encumbering, or otherwise disposing of, in any manner, any funds, assets, securities, claims or other real or personal property,

including any notes or deeds of trust or other interest in real property, wherever located, of any one of the Defendants, or their subsidiaries or affiliates, owned by, controlled by, managed by or in the possession or custody of any one of them and from transferring, encumbering dissipating, incurring charges or cash advances on any debit or credit card of the credit arrangement of any one of the Defendants, or their subsidiaries and affiliates.

## VII.

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, the freeze, previously ordered by the TRO, shall remain in place on all monies and assets (with an allowance for necessary and reasonable living expenses to be granted only upon good cause shown by application to the Court with notice to and an opportunity for the SEC to be heard) in all accounts at any bank, financial institution or brokerage firm, or third-party payment processor, all certificates of deposit, and other funds or assets, held in the name of, for the benefit of, or over which account authority is held by Defendants Moddha, Sandor, and/or Porrazzo, including but not limited to, the accounts listed below:

| Bank Name | Account Name | Account Number |
|---|---|---|
| Bank of America, N.A. | Moddha Interactive, Inc. | XXXX XXXX X286 |
| Bank of Hawaii | Moddha Interactive, Inc. | XXXX-XXX868 |
| First Hawaiian Bank | Moddha Interactive, Inc. | XX-XXX772 |
| First Hawaiian Bank | Marianne Veronika Sandor | XX-XXX747 |
| First Hawaiian Bank | Marianne Veronika | XX-XXX169 |

| Bank Name | Account Name | Account Number |
| --- | --- | --- |
| | Sandor | |
| JPMorgan Chase Bank, N.A. | Edward M Porrazzo | XXXXXX316 |
| Bank of America, N.A | M Veronika Sandor ITF T.S. | XXXXXXXXXXXX003 |
| Bank of America, N.A. | M Veronika Sandor Cust T.S. UTMA | XXXXXXXXXXXX976 |
| Bank of America, N.A. | Marianne Veronika Sandor | XXXXXXXXXXXX773 |
| Bank of America, N.A. | Edward Michael Porrazzo Marianne Veronika Sandor | XXXXXXXXXXXX412 |
| Bank of America, N.A. | Edward Michael Porrazzo Marianne Veronika Sandor | XXXXXXXXXXXX104 |
| Bank of America, N.A. | Synergistic Media LLC | XXXXXXXXXXXX807 |
| Bank of America, N.A. | S.E. Maritime LLC | XXXXXXXXXXXX777 |
| Bank of America, N.A. | S.E. Maritime LLC | XXXXXXXXXXXX780 |
| Bank of America, N.A. | Tecno Moddha LLC | XXXXXXXXXXXX500 |
| Bank of America, N.A. | Tecno Moddha LLC | XXXXXXXXXXXX539 |
| Bank of America, N.A. | Tecno Moddha LLC | XXXXXXXXXXXX568 |
| Wells Fargo Bank, N.A. | T.J.S.; Veronika Sandor | XXXXXXX137 |
| Wells Fargo Bank, N.A. | Veronika Sandor | XXXXXXX026 |
| Wells Fargo Bank, N.A. | T.J.S.; Veronika Sandor | XXXXXXX306 |
| HSBC Bank PLC | Marianne Veronika Sandor | XXXXXXXXXX654 |
| HSBC Bank PLC | Marianne Veronika Sandor | unknown (linked account) |
| BMI Federal Credit Union | Marianne Sandor | XXXXXXX083 |
| USAA | Edward Porrazzo | unknown |

Any bank, financial institution or brokerage firm, or third-party payment

processor holding such monies and assets described above shall hold and retain

within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets except as otherwise ordered by this Court.

## VIII.

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, the freeze, previously ordered by the TRO, shall remain in place on all monies and assets (with an allowance for necessary and reasonable living expenses to be granted only upon good cause shown by application to the Court with notice to and an opportunity for the SEC to be heard) in the account listed below held by Defendant Street:

| Bank Name | Account Name | Account Number |
|---|---|---|
| Bank of Hawaii | Spar International Art Publications | XXXXXXX376 |

Any bank, financial institution or brokerage firm, or third-party payment processor holding such monies and assets described above shall hold and retain within their control and prohibit the withdrawal, removal, transfer or other disposal of any such funds or other assets except as otherwise ordered by this Court.

## IX.

IT IS FURTHER ORDERED that Defendant Sandor's obligation under the TRO to repatriate funds held in foreign locations at HSBC Bank PLC in the name of Marianne Veronika Sandor, or for the benefit or under the direct or indirect control of Sandor, or over which Sandor exercises control or signatory authority,

by transferring them to the registry of this Court, whether by wire transfer, third-party payment processor or otherwise, at the direction of either Defendant Sandor or any of her agents, representatives or accredited advisors, shall remain in effect.

## X.

IT IS FURTHER ORDERED that Defendants' obligation under the TRO to forthwith prepare and deliver to the SEC a detailed and complete schedule of all of their personal assets, including all real and personal property exceeding $5,000 in value, and all bank, securities, and other accounts identified by institution, branch address and account number, shall remain in effect.  The accounting shall include a description of the sources of all such assets.  Such accounting shall be filed with the Court no later than five days from the entry of this preliminary injunction, and a copy shall be delivered by email to the SEC to the attention of Amy J. Longo, Gary Y. Leung, and Jasmine Starr, counsel for the SEC: email addresses: longoa@sec.gov, leungg@sec.gov, and starrja@sec.gov.  After completion of the accounting, Defendants shall produce to the SEC, at a time agreeable to the SEC, all books, records and other documents supporting or underlying his accounting.

## XI.

IT IS FURTHER ORDERED that any person who receives actual notice of this Order by personal service or otherwise, and who holds, possesses or controls assets exceeding $5,000 for the account or benefit of any one of the Defendants,

shall within five days of receiving actual notice of this Order provide counsel for the SEC with a written statement identifying all such assets, the value of such assets, or best approximation thereof, and any account numbers or account names in which the assets are held.

## XII.

IT IS FURTHER ORDERED that, except as otherwise ordered by this Court, Defendants and their officers, his agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with him, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are preliminarily restrained and enjoined from, directly or indirectly: destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, any documents, which includes all books, records, computer programs, computer files, computer printouts, contracts, emails, correspondence, memoranda, brochures, or any other documents of any kind in their possession, custody or control, however created, produced, or stored (manually, mechanically, electronically, or otherwise), pertaining in any manner to Defendants Moddha, Sandor and Porrazzo.

## XIII.

IT IS FURTHER ORDERED that the SEC may continue to conduct expedited discovery concerning Defendants Moddha, Sandor and Porrazzo, their

assets and activities, as previously granted in the TRO, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 33, 34, 36, and 45 of the Federal Rules of Civil Procedure and the corresponding Local Rules of this Court, discovery shall proceed as follows:

(A)     Pursuant to Rule 30(a) of the Federal Rules of Civil Procedure, the SEC may take depositions upon oral examination on two days' notice of any such deposition.  Depositions may be taken Monday through Saturday.  As to the Defendants and their agents, servants, promotors, employees, brokers, associates, attorneys, and any person who transferred money to or received money from the bank accounts identified above, and those persons in active concert or participation with them, the SEC may depose such witnesses after serving a deposition notice by facsimile, hand or overnight courier upon such individuals, and without serving a subpoena on such witness.  Depositions that have not been signed by the witness may be used for purposes of the hearing on the SEC's application for preliminary injunction;

(B)     Pursuant to Rule 33(a) of the Federal Rules of Civil Procedure, Defendant shall answer up to ten of the SEC's interrogatories, including subparts, which shall be answered within five days of service of such interrogatories;

(C)     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, Defendant shall produce all documents in response to up to ten of the SEC's

document requests within five days of service of such requests, with production of the documents made by overnight courier to Amy J. Longo, Gary Y. Leung, and Jasmine Starr, U.S. Securities and Exchange Commission, 444 S. Flower Street, Suite 900, Los Angeles, CA 90071, or such person or place as counsel for the SEC may direct in writing;

(D)    Pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, Defendant shall respond to up to fifteen of the SEC's requests for admissions within five days of such requests;

(E)    Pursuant to Rule 45 and the applicable provisions in the Securities Act and Exchange Act, the SEC may serve subpoenas to third parties, subject to approval by the Court;

(F)    Written discovery propounded and depositions taken pursuant to this section of this Order shall not count against the limitations on the number or duration of written discovery and depositions set forth in the Federal Rules of Civil Procedure; and

(G)    All written responses to the SEC's requests for discovery under the Federal Rules of Civil Procedure, including the SEC's interrogatories and the SEC's requests for admission, shall be delivered by email and overnight courier to the SEC to the attention of Amy J. Longo, Gary Y. Leung, and Jasmine Starr, U.S. Securities and Exchange Commission, 444 S. Flower Street, Suite 900, Los

Angeles, CA 90071, email addresses:  longoa@sec.gov, leungg@sec.gov, and starrja@sec.gov, or such other place and person as counsel for the SEC may direct in writing.

## XIV.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction over this action for the purpose of implementing and carrying out the terms of all orders and decrees which may be entered herein and to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

IT IS SO ORDERED.

Dated: July 25, 2018 at Honolulu, Hawaii.



_____
Derrick K. Watson
United States District Judge

---

_Securities and Exchange Commission v. Moddha Interactive, et al._;
Civil No. 18-00264 DKW RLP; **PRELIMINARY INJUNCTION AND ORDERS:  (1) FREEZING ASSETS; (2) REPATRIATING ASSETS; (3) REQUIRING ACCOUNTINGS; (4) PROHIBITING THE DESTRUCTION OF DOCUMENTS; AND (5) GRANTING EXPEDITED DISCOVERY**