IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) CIVIL NO. 18-00264 DKW-WRP ) |
| Plaintiff, | ) FINDINGS AND ) RECOMMENDATION TO GRANT ) PLAINTIFF SECURITIES AND |
| vs. | ) EXCHANGE COMMISSION'S ) MOTION FOR A DEFAULT |
| MODDHA INTERACTIVE, INC., ET AL. | ) JUDGMENT AGAINST ) DEFENDANT SPAR STREET ) |
| Defendants. | ) ) |

FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR A
DEFAULT JUDGMENT AGAINST DEFENDANT SPAR STREET

Before the Court is Plaintiff Securities and Exchange Commission's Motion for a Default Judgment Against Defendant Spar Street, filed on September 10, 2020 (Motion). See ECF No. 87. As directed by the Court, Plaintiff served a copy of its Motion on Defendant Spar Street. See ECF No. 89. Defendant Spar Street did not file an opposition or other response to the Motion. Plaintiff filed its Reply noting the lack of opposition on October 23, 2020. See ECF No. 90. The Court found the Motion suitable for disposition without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii. See ECF No. 88.

After careful review of the record in this action and the relevant legal

authority, the Court FINDS AND RECOMMENDS that Plaintiff's Motion be GRANTED.[1]

## BACKGROUND

This enforcement action was filed in connection with an ongoing private placement offering by Defendants Moddha Interactive, Inc. and its directors and officers, Marianne Veronika Sandor and Edward Michael Porrazzo. See ECF No. 1. On July 1, 2020, the Court entered final judgments against these Defendants. See ECF No. 81. As to Defendant Spar Street, the Complaint alleges that Defendant Street was paid commissions for acting as a sales agent for the private placement of unregistered securities for Defendant Moddha Interactive, Inc. See ECF No. 1 ¶¶ 3-4. The Complaint alleges that Defendant Street is not registered to be a broker and is not associated with a registered broker-dealer. See id. ¶ 13. Based on these actions, the Complaint alleges that Defendant Street violated the broker-dealer registration provisions of Section 15(a) of the Securities Exchange Act (Exchange Act), 15 U.S.C. § 78o(a). See id. ¶¶ 98-105, 127-29.

The Clerk entered default against Defendant Street pursuant to Rule

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court. A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

2

55(a) of the Federal Rules of Civil Procedure on August 11, 2020. See ECF No. 85. The present Motion followed.

## DISCUSSION

Default judgment may be entered if the defendant has defaulted by failing to appear and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]" Fed. R. Civ. P. 55(b)(1), (2). The granting or denial of a motion for default judgment is within the discretion of the court. Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511-12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

### A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant Street. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

Here, the Court has subject matter jurisdiction over Plaintiff's federal claims under the Enforcement Act. See 15 U.S.C. § 78aa. The Court has personal

3

jurisdiction over Defendant Street because Plaintiff alleges that Defendant Street is a Hawaii resident and that Defendant Street was properly served.  See ECF No. 83.

### B. Default Judgment Factors

Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate.  The court should consider the following factors in deciding whether to grant a motion for default judgment:

>    (1)  the possibility of prejudice to the plaintiff;
>    (2)  the merits of plaintiff's substantive claim;
>    (3)  the sufficiency of the complaint;
>    (4)  the sum of money at stake in the action;
>    (5)  the possibility of a dispute concerning material facts;
>    (6)  whether the default was due to excusable neglect; and
>    (7)  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471-72 (the Eitel factors).

On default "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations as to liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

### 1. The Possibility of Prejudice to Plaintiff

The first factor considers whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, absent entry of default judgment, Plaintiff would be without another recourse for recovery against Defendant Street. Accordingly, the first Eitel factor favors default judgment.

### 2. Merits of Plaintiff's Substantive Claims

For purposes of liability, the factual allegations in the complaint are taken as true on default. See TeleVideo Sys., Inc., 826 F.2d at 917-18; Fair Hous. of Marin, 285 F.3d at 906.

Here, the allegations in the Complaint, taken as true, establish that Plaintiff is entitled to default judgment against Defendant Street. Plaintiff asserts a claim against Defendant Street for violation of the broker-dealer registration provisions of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). See ECF No. 1 ¶¶ 98-105, 127-129. In support of this claim, the Complaint alleges that Defendant Street was paid commissions for acting as a sales agent for the private placement of unregistered securities for Defendant Moddha Interactive, Inc. See id. ¶¶ 3-4. The Complaint alleges that Defendant Street is not registered to be a broker and is not associated with a registered broker-dealer. See id. ¶ 13.

After considering the allegations in the Complaint, this factor weighs

in favor of default judgment because the allegations, taken as true, are sufficient to establish Plaintiff's claim against Defendant Street.

### 3. Sufficiency of the Complaint

The allegations in the Complaint are sufficiently pled and supported by the documents filed with the Motion. The Court finds that the sufficiency of the Complaint weighs in favor of default judgment.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citing Eitel, 782 F.2d at 1472). Here, Plaintiff seeks $171,845.00 representing disgorged profits gained by Defendant Street as a result of the conduct alleged in the Complaint, prejudgment interest in the amount of $4,455.13, and a civil penalty of $7,500.00, for a total of $183,800.13. See ECF No. 87-7. Although this is a significant amount of money, the Court finds that Plaintiff's requested remedies are tailored to Defendant Street's specific wrongful conduct. The Court finds that this factor too weighs in favor of default judgment.

### 5. Possibility of Dispute Concerning Material Facts

The well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendant Street has been given a fair opportunity to defend this

action and has not done so. Because no dispute has been raised regarding Plaintiff's material factual allegations, this factor favors default judgment.

### 6. Whether Default was Due to Excusable Neglect

The Court finds that Defendant Street's default was not the result of excusable neglect. Defendant Street's default was not the result of any excusable neglect, but rather due to their conscious and willful decision not to defend this action. Defendant Street failed to defend this action and default was entered against him. See ECF No. 85. This factor too favors default judgment.

### 7. Policy Favoring Decisions on the Merits

Defendant Street's default renders a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh Eitel factor is not alone dispositive"). Here, Defendant Street has failed to defend this action and has consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendant Street.

### 8. Totality of Eitel Factors

7

The Court finds that the totality of the Eitel factors weighs in favor of entering default judgment against Defendant Street.

### C. Remedies

Although Defendant Street's default establishes liability, it does not establish the relief to which Plaintiff is entitled. See Fair Hous. of Marin, 285 F.3d at 906. Plaintiff must provide evidence to support its requested relief and that relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Plaintiff requests the following: $171,845.00 in disgorged profits; $4,455.13 in prejudgment interest; and $7,500 as a civil penalty for a total monetary award of $183,800.13. See ECF No. 87-1 at 11-13. Additionally, Plaintiff asks the Court to issue a permanent injunction enjoining Defendant Street from future violation of Section 15(a) of the Exchange Act. See id. at 14-15. Each category of requested relief is addressed below.

### 1. Disgorged Profits

In an SEC enforcement action, courts may order "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims." Liu v. Sec. & Exch. Comm'n, 140 S. Ct. 1936, 1940 (2020) (citing 15 U.S.C. § 78u(d)(5)). "Disgorgement need be only a reasonable approximation of profits causally connected to the violation." Sec. & Exch. Comm'n v. Platforms Wireless

8

Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010) (citations omitted).

Here, Plaintiff requests disgorgement of the amount of funds transferred to Defendant Street as commissions for the investments. See ECF No. 87-1 at 15. In granting Plaintiff's motion for a preliminary injunction in this action, the district court found that such transfers to Defendant Street "came immediately on the heels of Moddha's receipt of investment funds, and each payment consistently represented 15% of the amount of investment funds received." See ECF No. 33 at 10. Further, the district court found that "there is no evidence" that the funds transferred to Defendant Street were for legitimate business dealings. See id. at 10-11 (holding that "[t]he payments need not be accompanied by a label designating them as 'commissions' in order for the Court to identify them as such."). As detailed in Plaintiff's Motion, it seeks to recover the disgorgement amount in order to return those funds to investors who lost significant sums of money. See ECF No. 87-1 at 15-16. Because the amount sought by Plaintiff does not exceed Defendant Street's net profits and is sought for the purpose of distributing it to the victims, the Court finds that Plaintiff has established that it is entitled to an order that Defendant Street is liable for $171,845.00 in disgorged profits.

### 2. Prejudgment Interest

When awarding disgorged profits, the Court should "include all gains

9

flowing from the illegal activities." SEC v. Cross Fin. Servs., Inc., 908 F. Supp. 718, 734 (C.D. Cal. 1995), *aff'd sub nom.* SEC v. Colello, 139 F.3d 674 (9th Cir. 1998). The award should "include prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity." Id.; see also S.E.C. v. Henke, 130 Fed. Appx. 173, 174 (9th Cir. 2005) ("Whether prejudgment interest will be awarded in a securities fraud case is a question of fairness, lying within the court's sound discretion" (citation omitted)).

Plaintiff provided a report reflecting that the calculation of prejudgment interest on the disgorgement amount of $171,845.00 from November 16, 2017, which is the date on which Defendant Street had received all commissions, to July 9, 2018, which is the date that the Complaint was filed, is $4,455.13. See ECF No. 87-5; ECF No. 87-2 ¶ 5. The Court finds that Plaintiff has established that it is entitled to an order that Defendant Street is liable for $4,455.13 in prejudgment interest.

### 3. Civil Penalty

Under Exchange Act, the Court can award civil penalties in an amount "determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A). Civil penalties are assessed according to a three-tier system. See 15 U.S.C. § 77t(d). Here, Plaintiff seeks a first-tier penalty, which may be imposed for any violation. See id. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i). A court may

impose "first tier" penalties in an amount not to exceed $7,500 per violation. See 15 U.S.C. § 78u(d)(B)(i).  When awarding civil penalties, "courts routinely consider five factors, established in S.E.C. v. Murphy, 626 F.2d 633 (9th Cir. 1980)" used to evaluate if an injunction is appropriate, which include "(1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations." S.E.C. v. CMKM Diamonds, Inc., 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009).

      As to the first factor, scienter is not required to prove a violation of Section 15(a), so this factor is neutral.  See 15 U.S.C. § 78o(a).  As to the second factor, Defendant Street's violation was not an isolated incident but recurrent.  As to the third factor, Defendant Street has done nothing to recognize the wrongful nature of his conduct.  As to the fourth factor, although a permanent injunction has been entered against the other Defendants, given Defendant Street's repeated disregard of securities regulations, it is foreseeable that future violations could occur.  Finally, as to the fifth factor, Defendant Street has mode no assurances against future violations.  Based on these factors, the Court finds that Plaintiff has established that a first-tier penalty of $7,500 is appropriate against Defendant

11

Street.

### 4. Permanent Injunction

The Court may issue a permanent injunction in an enforcement action. See 15 U.S.C. § 77t(b), 15 U.S.C. § 78u(d)(1). To obtain an injunction, Plaintiff must establish that there is a reasonable likelihood of future violations. See S.E.C. v. Loomis, 17 F. Supp. 3d 1026, 1029 (E.D. Cal. 2014) (citing S.E.C. v. Fehn, 97 F.3d 1276, 1295 (9th Cir. 1996)). In evaluating the likelihood of future violations, the court must consider the same five factors set forth above identified by the Ninth Circuit in S.E.C. v. Murphy. For the same reasons detailed above, the Court finds that Plaintiff has demonstrated that the relevant factors indicate that absent a permanent injunction, there is a likelihood that Defendant Street may commit future securities violations. Accordingly, the Court finds that Plaintiff has established that it is entitled to a permanent injunction against Defendant Street enjoining him from future violations of Section 15(a) of the Exchange Act.

### CONCLUSION

The Court FINDS and RECOMMENDS that Plaintiff Securities and Exchange Commission's Motion for a Default Judgment Against Defendant Spar Street be GRANTED as follows:

(1) The district court GRANT Plaintiff's request for default judgment against Defendant Spar Street;

(2) The district court AWARD $171,845.00 in disgorged profits; $4,455.13 in prejudgment interest; and $7,500 as a civil penalty, for a total of $183,800.13; and

(3) The district court permanently ENJOIN Defendant Spar Street from future violations of Section 15(a) of the Exchange Act.

Plaintiff shall transmit a proposed order of final judgment to the district court at watson_orders@hid.uscourts.gov for review in accordance with this Findings and Recommendation.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, OCTOBER 26, 2020.



Wes Reber Porter
United States Magistrate Judge

**SECURITIES AND EXCHANGE COMMISSION v. MODDHA INTERACTIVE, INC., ET AL.**; CIVIL NO. 18-00264 DKW-WRP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR A DEFAULT JUDGMENT AGAINST DEFENDANT SPAR STREET